Ms. Zaharsky, we're ready to hear from you whenever you're ready. Good morning, and may it please the Court. The interest netting statute here applies based on its plain text, because interest is running on underpayments and overpayments that are by the same taxpayer. Bank of America is the same taxpayer for the overpayments and underpayments because of the merger. As a result of the merger, it's taken on all of the assets and liabilities and the very identities of the merged companies. That is including for prior events, for any kind of liability, not just tax liability, but for environmental liabilities, tort, contract, anything. Bank of America is now the responsible party for what happened in the past. And to a certain extent, the government agrees with that because they want the merger to make Bank of America responsible for all of those past tax obligations. The merger is what makes Bank of America responsible for the overpayments and underpayments in the first place. So if we look at Judge Conrad's decision in this case where he discusses the elliptical, I forget the entire phrase, elliptical parentheses, and we were to decide that that was a tad too ephemeral for us to rely on. How does that work into your argument? So the judge referred to a grammatical ellipse to add words to the statute, right? To add the word made to the statute. I'm not sure that the statute doesn't say made and it just doesn't fix a particular freeze in time, the consideration of when someone is the same taxpayer. So I'm not really sure if you read in the word made or just say by the same taxpayer that it matters because the question is, you know, like, when does it have to be the same taxpayer? And made doesn't answer that question. In particular, we know that made, which the judge read in, doesn't answer that question because that language is in the parallel payment netting section 6402A. It says by the people that made the taxpayer, the person that made the overpayment. And the Supreme Court interpreted that in the Sorensen case to say that's just the person the overpayment is attributable to. It doesn't tell us a time limit. And that's actually the same position that the government had previously taken with respect to that provision. So it just says by the same taxpayer and the question is, you know, are we the same taxpayer? Right now we need to do the interest netting. There was a long audit where all of these tax years were open. In 2014, the government finally came back to us and said here's the finals, overpayments and underpayments for all these tax years. It's time to do the interest netting. And at that point in time, the mergers had happened and we are the same taxpayer. So, you know, the government's view, I think, requires you to freeze the statute in time in a way that it's not frozen. And then it requires you to take a second step, which is to say that the merger doesn't have effect for events that happened in the past. Well, it seemed that, you know, overpayment and underpayment, they're nouns that tell us about an action, right? They're overpayments and underpayments by the same taxpayer are saying the same taxpayer overpaid and underpaid, right? It's telling us who did the action. And I'm struggling with the fact that the Internal Revenue Code sets a date for when the overpayment happened and when the underpayment happened, that those happened in a fixed time in the past. That those, according to the code, they didn't happen when you pay for it. You know, they happened at a fixed time in the past. And why doesn't that suggest that we ask, were these companies the same taxpayer when they made the overpayment and the underpayment? So, the code talks about when interest starts to run on an overpayment and underpayment. So, it doesn't say when the payment was made or not made. And in particular, the code defines underpayments as the amount that wasn't paid. So, like the missing amount. So, you don't make an underpayment. It's like the amount that you still owe. So, this idea that they're made on a certain point in the past, I think, is wrong. And if you look at the facts of this case, I think it shows that. It just isn't true that, say, for the test case one where we're talking about the 2005 tax years, that you can just say, let's look at what happened in 2005. Let's just freeze it all about what was happening in 2005, and that's when we'll decide. Because the government didn't even decide that there were underpayments and overpayments for those tax years until 2014, after the merger, when both Merrill Lynch and Bank of America filed their tax returns for 2005. So, you know, right at the beginning of 2006, there were zero balances on those tax returns. And the overpayments and underpayments only arose because of the changes that the government made and then made retroactive to earlier dates in 2014. And those earlier dates aren't 2005 dates. There is a 2006 date as the deemed to have occurred date for the underpayment, but the deemed to have occurred date for the overpayment is 2008. So, it's just not true that there's like this time that is, we'll just look just at the tax year, don't look at anything but the tax year, and just freeze it in time then. If that's true, we don't owe any money. That's the end of it because there were no overpayments and underpayments then. So, the government is doing, I think, the same thing that they try to criticize us for, which is looking at things that happened after the tax years at issue and then making them retroactively applicable to what happened or to the obligations for those tax years. So, it's just, I mean, it's just not right to say that the years are fixed in time and that's just not what the government is doing. And I don't think that, you know, that is what their guidance represents either. I mean, they, for example, had, you know, written guidance on this. It was a field service advisory, so not precedential, but the kind of thing that the U.S. Supreme Court said you could look at as evidence in the Rowan case. They have a field service advisory that says in the context of a merger that you could do interest netting in these circumstances. And the position that they're taking today, I think, is inconsistent with a whole bunch of formal revenue rulings that are binding guidance on them that talk about what it means to be the same taxpayer. Well, so, do I understand your theory correctly that we have, for your theory to work, we have to look at kind of like the date of payment or the date, the date that you're settling up with the government, that it's all, you know, the dust is settled and the company decides it's time to pay. For your theory to work, we can't be looking at the, you know, the date interest started running for these companies because they were not the same taxpayer, the date that interest started running. We think that the right way to look at it is the kind of now point in time, the settling up point in time, and I can explain more precisely what that is. But we think that we win even if you look at the past point in time, because the effect of the merger is retroactive. We are responsible for- I wondered about that, yeah, because you give me a lot, you have a lot of authorities that stand for, I think, the correct proposition that when company A and B merge and become company C, that B is the same as C and A is the same as C. But I didn't, I haven't seen any authorities that say that makes company A and B the same company. They're both the same as the resulting entity, right, because they have merged their interests into that resulting entity. But I haven't seen anything saying, well, retroactively, they're like both the same company before the merger. Well, let me give you a couple of answers. One is based on Delaware law and in particular the merger statute, which is section 259A. It says that the prior companies become the surviving company and the surviving company is them as if it always had been that way. So they're all, they're all treated as the same. But then second, and maybe more to the point, we have how the government has viewed the same taxpayer requirement before and after a merger in other tax contexts. So they're, they're arguing about it here, right? But they have issued revenue rulings, which are binding IRS guidance. There's four of them that we cite in our brief section or revenue ruling 59-399, 62-60, 66-125, and 72-356. Let me just illustrate two of them because I think they show kind of similar situations. So one is a revenue ruling 62-60. The question was, after a merger, is the taxpayer the same taxpayer for purposes of the federal unemployment tax, which depends on, do you have a certain number of employees who've worked a certain number of days? And the merge company had some employees that had worked some number of days. And the question was, do you can, do you now attribute those to the surviving company? And the IRS guidance said, yes, for those purposes, they're the same taxpayer. Another example is in revenue ruling 66-125, which is about an excise tax refund for like cigarettes. You have to be the same manufacturer for tax purposes so that if you take up, if you take cigarettes off the market, you get like a refund of your excise taxes. And there were two companies that merged and one of them had paid the excise taxes. And as a result of the merger, the surviving company said, we want a refund for this thing that happened in the past. And the IRS said, yes, you're the same for those purposes. And so, you know, really for essentially every purpose we can find, except for this interest netting purpose, they recognize that we are the same taxpayer. It's true that the merger has to happen. So to some extent, you're looking at it going forward. But as you're going forward, you know, there are things in the past and the question is, are you attributing them? Are you treating them as the same taxpayer as the surviving entity? And, you know, the service has said yes. And, you know, case law says, yes, the Supreme Court said yes in the Metropolitan Edison case. All of those seem to be talking about the surviving entity, the relationship between the surviving entity and one of the, you know, entities that swallowed, one of the partners to the merger and the surviving entity, not the two, the two entities, you know, that existed before, not their relationship to each other. Do you know what I mean? The relationship between A and B, not the relationship to the surviving entity. I mean, 360, is it 368? Yeah. 368 has a term for this, a party to a reorganization. And that includes both of both the two preexisting entities and the surviving. They're all in that definition. But I think that seems to be a different relationship. But they're all considered one in the same. There's the, you know, colorful language in one of the cases about how they all become part of the muscle and bloodstream as if it always was that way. So they all are the same company as a result of the merger, including looking backwards. That's why we have to, we're responsible for Merrill Lynch's tax payments from back then in the first place. Like if we weren't, if they weren't us now, we weren't them and we weren't all of the merged banks, then we wouldn't be responsible for that money. But the government wants the money from us. And so for purposes of getting the payments, it understands that we are all the same now. I think you're responsible now. But I had kind of, we had talked about your theory that looks at now, but then this was talking about, could you win if we're looking at, you know, 2008 or whatever. Right. So let me address both of those. One, I don't think you want to just look at 2005 because if you just look at 2005 and fix it in time, the government loses because there were no underpayments and overpayments. The only reason that they had those is because they did stuff in 2014 after the merger and then they deemed it retroactively applicable. So it's not like you just look at what happened in 2005. So I just don't think that they even win under that theory. But in terms of why we're right about the retroactive application, I'll just point you to a few sources. One, Delaware law, which says it is as if we had all always been the same company. Two, the IRS revenue rulings that we talked about. Three, rulings from the Supreme Court in the Metropolitan Edison case and the Southgate case from this court. And, you know, for the fact that they recognize that, you know, for things that happened in the past, torts that happened in the past, contract obligations, all of those, like we are responsible. We are them going backwards. But to answer the second part of your question, we don't think that you have to decide that question about freezing in the past and it wouldn't make sense to freeze it in the past because no language freezes it in the past in the statute. And we're talking about doing something now. Interest netting only happens like at the end of figuring out the overpayments and underpayments, like after, say here in this case, there were a lengthy audit. So at the end of the audit, the government says, okay, here's your overpayments and underpayments and it's time to do the interest netting. That's what we're trying to do now and get an answer on. That's what the statute talks about. So the statute's time is now. I would just point out one other wrinkle. There are not, there's not actually just one overpayment and underpayment, but there are different overpayments than underpayment amounts because the government made like different adjustments over time. And so there are points at which there are underpayments and there are points at which there are overpayments. The reply brief footnote one kind of explains this, but the point is, is that it's not frozen in time. That's what I would say. Let me ask, take it a slightly different direction. Both the district court and the parties discussed this federal circuit case, Wells Fargo. And I'd like both counsel to tell me how they addressed this. So in Wells Fargo, there was no netting in what they called situation one. That's where the non-surviving corporation had an overpayment before the merger and the surviving corporation had an underpayment before the merger. So no netting there. In situation three, the non-survivor has an overpayment pre-merger and the surviving corp has a post-merger underpayment. Netting allowed. So as I read through the fairly extensive discussion on example three, which went through metropolitan Edison and all those cases, I came away with the question of, I don't understand why you simply couldn't substitute the facts in situation one in the number three and there would be netting in both cases. And I don't think that the federal circuit's explanation for situation one, they say, we have this earlier case, energy something or other, therefore there's no netting. But when I looked at it analytically going through such test case number three, I don't see the difference between three and one from an analytical standpoint, which I suspect you will agree with. Yes, I think you have it exactly right. I think the Wells Fargo decision is problematic and would not be something you'd want to follow for two reasons. One, you identified, which is the internal inconsistency. The court seemed to believe that it was bound by the prior decision in Energy East, which did not address a merger, but addressed a parent subsidiary situation where there was really never any argument that they were the same because they retained their different corporate identities. And so the court said, I see the red lights on, but can I? Okay. The court said that Energy East addresses situation one, so we're bound by that. But when we're not bound by that, we're going to have that whole discussion that you mentioned, which basically follows our position. The second thing I would say about Wells Fargo is that it's not consistent with the government's position. In this case, the government's position is freeze it in time, right? Freeze it in time. And if you freeze it in time, I don't see how you would say that netting would be okay in situation three because there you had two taxpayers with, according to the government, two different names where one overpayment was before the merger. And then the underpayment with a taxpayer with a different name was after the merger. And so if you took the government's freeze it in time, only look at the past stuff, then they should have said, the Wells Fargo court should have said no to situation three. And so, you know, we just think there's something deeply wrong with that decision. And so the court should give it a very close look and not follow it here. Thank you very much. You've got some rebuttal time. Ms. Del Sol, we'll be glad to hear from you. Good morning, Your Honors. May it please the court. This case is exactly like Wells Fargo's situation one where the federal circuit addressed the same situation where the overpayment and the overpayment happened pre-merger. And we believe that this court should follow the federal circuit and reach the same result here. And I'd like to explain why that's correct. You're not bound by that Energy East case. And that was my point with opposing counsel. When I read through the analysis of test case number three, it looked like to me that you could put the facts from test case number one into that and you would get netting permitted. I think that's not correct, Your Honor. First of all, because you are a different circuit, you're not bound by either Energy East or Wells Fargo. But I think Wells Fargo followed Energy East with regard to, you look at the time the overpayments and underpayments happened because they found that that same statutory language applied in the, required you to look at a particular point in time. And in situation one, the two corporations, A and B, were entirely separate. You know, just saying that we're talking about Bank of Maryland or A and B. Number three, you have a pre-merger overpayment and a post-merger underpayment. Well, the situation, that's exactly what Judge Rushing, I think, was getting at when she said, beforehand, you have A and B are separate. And at the point in time that you look for this statute, which I'd like to explain why that's correct, is you look at the time the overpayment and underpayment happened. At that time, they're entirely separate. They've not had any affiliation. And in situation three in Wells Fargo, they've combined, they've become A and B, A plus B, or as Judge Rushing suggested, corporation C. And one is assumed and the other, so that you could say, you could say that A is the same as C and B is the same as C. But looking back, there's nothing in either federal tax concepts or Delaware merger law that says that they retroactively become the same. And so, I'd like to just, like, get at why you look at that particular point in time and why the bank is wrong that when you settle up is the relevant time. That just sounds completely wrong to me on Delaware law. I mean, they're pretty clear on the merge, on the effects of merger that the surviving corporation takes on all the aspects of both corporations. Well, I think what's important here, first of all, is we do think this is a federal tax law question because you're interpreting a federal statute. And Delaware law simply informs that. But in Delaware law, it speaks in terms of one corporation stepping, you know, assuming the liabilities of another, being treated as if they were the same. And I think this is an important difference that my friend repeatedly emphasized, that these Delaware statutes require treating the pre-merger entity as a successor to, as if it were, and regarding them as the same. And I think what's important here is this particular statute requires that they actually be the same. And I think if Congress had wanted to write a statute that says whoever ends up with the liabilities and whoever ends up with the obligation, the rights to the overpayments, if they're the same, netting applies, it could have done that. But it didn't do that. It used these terms, this phrase, overpayments and underpayments by the same taxpayer, which the federal circuit said, this means you look at when the overpayments and the underpayments happen. And it may be that, you know, when you pay your tax, you pay a certain amount and you don't realize you have an underpayment, but you actually do. What happens later is that it ought to happen and it's discovered that there actually is an overpayment. But that overpayment happened when it happened. The principal tax amount gets netted out. Now you have this interest. So one of the arguments they make, which may not apply for tax law purposes, but just for a common sense approach, it would be difficult to explain, okay, you the taxpayer don't owe any tax, but you still owe us interest. Well, in this particular case, as it's laid out at page 154 through 155 of the joint appendix, what happened was not that the government, the secretary on his own had any authority to net out these tax liabilities. In fact, their position, the secretary's position in this case has been that they didn't have such authority, that instead what happened is that the bank, in its role as Merrill's successor, not as the same taxpayer as Merrill, asked that Merrill's overpayment be applied to the bank's underpayment. And that commonly happens under Revenue Ruling 6520, which has been going on since the 1960s, that one taxpayer can ask to have its payment applied to the liability of the other. And that's what happened here as those documents in the record indicate. And I think when you look at Section 6402, which is the offsetting provision for liability, I think it's questionable whether the secretary could have, I mean, I think the secretary reads that as not allowing that authority because it actually only allows crediting the overpayment against the liability and respective attacks on the part of the person who paid the overpayment. So that would be, I mean, that Merrill's the person who paid the overpayment, so it doesn't necessarily follow that the 6402 could apply. But even if it does, this is very different language. But it applied in this case. Well, what I'm saying is it didn't apply. What actually happened, the bank has suggested that, but what actually did happen is that the bank asked another taxpayer's overpayment to be applied to its liability. And that was done because the bank was in the shoes of Merrill after the merger asking that that money that belonged to Merrill. I understand the argument that you're making there, but it just seems illogical to say that the government, Treasury Department, can say in two identical situations, we're going to allow the netting of the tax here because we just want to. But over here, same facts, we're not going to allow the netting. Well, I think an important part of this is that there is a different statute. There's a statute that specifically deals with interest and it, you know... I understand, but I can't remember the number now. 6402 maybe is the principal tax, the actual tax netting provision. So that's what I'm having an initial difficulty gripping. The government's argument seems to be that we have the discretion to completely different taxpayer... I'm not sure that's what we're arguing on. It'll be helpful if you let me tell you what I'm interested in first. So you have two taxpayers, legally separate, but they have the same overpayment, underpayment of tax problem. And you seem to be saying in situation one, we're going to allow the netting of the tax. And in situation two, we're not going to allow the netting of the tax because we have that discretion. Is that your argument on the tax? No, you're right. I think, well, when you're talking about situation one and two, I'm not sure what exactly you're referring to. Are you talking about the Wells Fargo situations one and two or are you talking about... No, that's just my own hypothetical. You've got two taxpayers, have no relationship whatsoever, but both of them were involved in merger situations. They've got tax that's overpaid, tax that's underpaid. And in one situation, the netting of the tax, not talking about interest, the netting of the tax is allowed, but the netting of the tax in the other one is not allowed. Well, I think whenever one taxpayer asks the IRS to apply its overpayment to another tax that's underpayment, that that can happen. And that happens between parent and subsidiary corporations all the time. Can I just clarify what you're saying? Are you saying under 6402 that can happen just because somebody asked? Are you saying, I thought the government's brief said in 6402, we don't think ever applies here, but this is like a gift and because they're responsible for... The Bank of America is responsible for Merrill and Merrill's responsible for the bank. We let them choose to pay each other's taxes. Yeah. I direct your honor to Revenue Ruling 6520, which is the revenue ruling we talk about in our brief that gives the IRS the authority to, when one taxpayer says, I want you to take my money and apply it to somebody else's liability, that the service can do that. And that's what's happened here as indicated at page 154 and 155 of the joint appendix. And I think in 6402, it actually says that the secretary's authority is limited. It says that the secretary can credit an overpayment and that's Merrill's that has overpayment here against any liability in respect of an internal revenue tax on the part of the person who made the overpayment, which would suggest that it could only offset against Merrill's own liability, which is why we don't think that that statute would apply here. But I think even if you could read on the part of the liability more broadly, it doesn't follow that the interest statute would have... That that would be true because under the interest statute, you have to have the same taxpayer making the overpayment and the underpayment. And I think there's a big difference between the time that's relevant for the overpayment and underpayment. As I mentioned before, you don't look to when you settle up, that's when you pay the underpayment or you get a refund of the overpayment. What we're looking at is when they actually occur in time. And yes, you may find out that there was in fact an underpayment when you realize, oh, well, you deducted something you shouldn't have, but that underpayment still happened at the time you file a return that underpaid your taxes. And there's a similar definition for overpayments under section 6601 and 6661, respectively. And that's what the federal circuit looked to determine that they were the same taxpayer. And I think the bank sort of has an overriding argument that this is somehow unfair because of this offsetting the liabilities, which was done under Revenue Ruling 6520, that the interest should also be offset. But Congress intentionally chose these differential interest rates and it did so because it was concerned about corporations sort of gaming the system with interest and with other tax attributes. And then it also, at the same time when it was a situation where the same taxpayer, one individual taxpayer had basically a net amount owed of zero because the overlap, because under the existing law, the Eighth Circuit had said if you have an overpayment and you get your refund and then you discover you have an underpayment for the same year later and they overlapped, you can't, well, I guess two separate years, because they did say that you could have annual netting. But if you had these two payments by the same taxpayer and some period where you had a net tax out of zero, you would still owe interest. And 6621D was trying to get that situation. The statute, to say what you say, and maybe you're correct, to say the same tax by the same taxpayer for the tax year in which the overpayment or underpayment was due. I mean, that would settle the timing question if it had that phrase in there. But it's not in this statute. Well, I think if you look, it uses terms that are defined in the Internal Revenue Code. The statute uses these terms overpayment and underpayment. And if you look at 6601, it explains that when you have, you reach the point where the tax is due and you've underpaid, that that's when the underpayment is created. And similarly with the overpayment, when you reach a point after the tax is due and you've overpaid. So these are terms that are defined by statute. And so it's not, Congress didn't need to put it in 6601, 6621D itself because what an overpayment is and what an underpayment is and when they happen are defined in these other statutes and the regulations under them that we cite in our brief. And I think when you look at what Congress, you know, if Congress wanted to have all the liability statute, all it would have had to do is say, you know, if they're the same taxpayer, when the underpayment, the liability on the underpayment is paid or when the overpayment is refunded. And that's not what Congress did. Instead, it tied it to when the overpayment and the underpayment actually happened. What is the impact of our case in air power insofar as the use of state law here? I'm sorry, which case, Your Honor? Air power. I'm sorry, I'm not remembering the specific facts of those cases, but I think, you know, under Delaware law. It was a case that went to whether we look at the federal taxing law, whether we're looking at the express language and whether it's necessary for an implication that it should be dependent upon state law. Well, I think, first of all, none of the legislative history or anything looks to merged entities. So I think within the, you know, the history of a statutory language in Section 6621 itself, there's nothing that suggests that state law should be what... So is Section 6621 dependent upon state law to any degree? Well, I think when you look at a phrase under federal law on the Morgan Supreme Court case and cases like the Dry and Irvine cases that we talk in our brief are also Supreme Court cases that say, when you're looking at what a term means under federal, for purposes of federal tax statute, that's a question for federal law. So when you're looking for what does same taxpayer mean, that's a question for federal law. And I think there are a lot of things about federal tax law that make it not make sense to treat the same taxpayer question as allowing merged entities when they still have no connection at all, but just later merge to be the same taxpayer. And I think, first of all, in Section 381 where the code talks about what happens as a tax consequences of a merger, it talks about what attributes transfer from one entity to another, from one taxpayer to another, which assumes that the entities are separate taxpayers. But 381 is not exclusive. I mean, there are a number of cases of that out there that says this gives you a list of things that go in a merger, but that's not all the things. But I think the point is that it uses a language about one thing being transferred to another. And here, the statutory language we're dealing with is language that says they have to be the same taxpayer. And so it doesn't fit to say it's okay if, as if they're another or things are transferred to another, what you need is for them to be the same taxpayer under the words of the statute. And I think to treat it as though these pre-merger entities are entirely separate, can retroactively be the same, poses a lot of problems for federal tax law, because federal tax law uses an annual accounting and each taxpayer has a separate taxpayer identification number. And for the years pre-merger, each of these taxpayers was, for tax purposes, an entirely separate entity with a separate tax accounting. And the code doesn't, if they were retroactively the same, you would assume that at least for open tax years, you would go back and amend returns so that all the attributes would go backwards, but that's not what happens. Instead, they keep their same returns and only in the year of the merger, the acquired corporation does a short year return. And then only thereafter are they filing one return together as one entity. I think another thing that would create real issues about having these same taxpayer, you know, having taxpayers treated as retroactively the same after a merger is the fact that under some state laws, including Delaware law, you can have different types of entities that are treated differently for tax purposes merging. So you could have a situation where you had something that was taxed as a partnership merging with something that's taxed as a corporation. And then to go back and say that for tax purposes, they're retroactively the same taxpayer would create a huge mess. And so I think that's another reason why the tax code doesn't contemplate the retroactive application that the bank would urge here. And I think when you look at the Delaware law itself, it doesn't support, you know, if you do get to Delaware law and find it relevant, I think that really, as I mentioned before, all the things that the bank cites talk about the entities becoming the same post-merger. And if Wells Fargo and Energy East are correct, and I think they are, that you look to this one point in time for the overpayment and the underpayment, there's nothing in the Delaware law that suggests that they're retroactively the same taxpayer. I mean, the Delaware law talks in terms of, uses the future perfect tense in terms of talking about once the merger happens, what will happen in terms of there being prospectively the same, the merger agreement here, likewise talked about what will happen going forward and what happens after the merger takes place. And I think the case law talks about it being as if, you know, things transferring from one to the other repeatedly. And that certainly suggests that they're not the same taxpayer. So fundamentally we have a situation where, you know, the actual statutory language is what's at issue. And this language about overpayments and underpayments by the same taxpayer, I think the federal circuit correctly concluded pertains to a particular period in time. And there's no reason to conclude that these, these retroactive, that somehow retroactively these entities that were, were undisputedly, I mean, it's the same taxpayer. In fact, the bank repeatedly says in its brief that these were pre-merger overpayments and overpayments. There's no question that, that at the time that an underpayment came into existence and the overpayment came into existence, they were the same taxpayer. Does that answer your question about the retroactivity, Your Honor? I understand your answer. All right. Thank you. Um, are there no further questions? We just, um, ask this court to, to follow the, the federal circuit. I think I understand your position on this, but just to clarify, if after the merger is when everything, all the underpayments and overpayments are sorted out, right? And they figure out who owes and what interest. And I mean, in this case, they did find some of them actually did span to after the merger. So it's possible that you could have had pre-merger overpayments and underpayments that were resolved before. And I think, um, but I think in this case, at least some of them, um, extended past the merger date. But if say, if say Merrill had, we find out after the merger that Merrill had across different tax years before the merger, had an overpayment and an underpayment that both were accruing interest at the same time, um, Merrill could still take advantage of that or Bank of America now could take advantage of that post-merger because it's, would be an overpayment underpayment by the same taxpayer. Well, so you're saying that Merrill pre-merger, Merrill's pre-merger across different tax years, it had an overpayment and underpayment interest was accruing at the same time on both. And when was the banks? And then the merger happens. And, and then after that, the bank has an overpayment. No, Merrill had them both pre-merger. So it was both Merrill. They both belong to Merrill. But they didn't figure it out until after the merger. And then they're trying to sort it out. So Merrill has both the underpayment and underpayment pre-merger in this situation. So yes, that would be the same taxpayer. It doesn't lose its ability to take advantage of interest netting just because it merged into another entity. So that's correct. And I think that really, that, that would be a situation where it would still be the same taxpayer that had the underpayment, the overpayment and it would not make any difference. So if there, if there are no further questions beyond that, I would just ask that this court affirm consistent with the federal circuit's opinion, which reached the same result on the exact same facts. Thank you. Thank you. Ms. Zaharsky, you've got some rebuttal time. I'd like to start with Judge Rushing's question, the last question. In those circumstances, there can be interest netting, but there's no Merrill Lynch anymore. Merrill Lynch is gone. That taxpayer is gone. There's only one taxpayer. It's Bank of America. It's the only taxpayer left standing. And it's responsible for everything going back, even things that were termed Merrill Lynch overpayments and underpayments in the past. Like at the time that the interest was accruing, you know, back then it was Merrill. Right. Merrill is gone. So if they want to try to get money from or do any kind of tax consequence for Merrill, Merrill's gone. The only thing left is Bank of America. That's kind of our fundamental point. We're figuring out, as our colloquy before was about, you know, we're figuring out now what to do with the overpayments and underpayments and the interest. There is only one taxpayer left and it is responsible. It is the same taxpayer for all those other purposes. And let me say, this is a narrow rule that applies only to merger. We're not saying any time that there is like a company that buys another company, but there's a separate corporate existence or whatever else. They can try to take advantage of this interest netting. It is the consequence of a merger that you are the same forwards and backwards and for everything. It's just this narrow car vote that they want for interest netting. Now, I know there's been a lot of discussion today. So I just want to step back and say there is a very straightforward path through this case. Is that an incentive to merge? Would this be an incentive to merge if you knew that you had these underpayments and overpayments in a situation? Is that a basis for doing this? No. And let me give you four reasons why. One, this is entirely hypothetical. Like the government has never come up with any situation in which someone has considered possible interest netting as a reason to merge. Two, mergers happen for business reasons as opposed to tax reasons, but for valid business reasons. And here there was a really important business reason. I'm talking about the amount of money that's on the line here that you're dealing with here. What about this? I think it was Bank of America that had the underpayment here. What would the situation be if that was already in litigation when they merged? So the tax years have changed the scenario in the fact that the government pursued it and brought litigation to get that underpayment before the merger? The tax years would have to be open and the government or the Bank of America or the taxpayer would have to make a claim for it. And so in these circumstances, the tax years were open because of all the adjustments that the government was making until 2014. They finally determined the overpayments and the underpayments. It was time to figure out the interest netting. They didn't agree with us. We made a claim. And then eventually that went to litigation. And so the merger happened while the tax years were open before the audit concluded. And that's our position. So yours is dependent quite a bit on the events that occurred after 2005, the openness of the tax year, the fact that they asked them for review and whatever. But does all of this in terms of the overpayment and underpayment, do they arise from the events of 2005? No, because the government made the adjustments in 2014. And those adjustments are not just because of facts that happened in 2005, but can be because of things after the fact, like lost carryovers or carrybacks that are on multiple years, like foreign tax credits that are on multiple years, like retroactive application of new government regulations. So it's not just like they're facts in 2005 and they weren't determined the right way in 2005. It's that a whole bunch of stuff was happening up through 2014. And so this idea that the government says that it's fixed in 2005 just isn't right. But I do want to get back to the other question. And on that point there, if you're saying it's not just 2005, does any of those changes affect another tax year? Yes, I think there were changes that affected other tax years. And to be fair, I think it's everyone's talking about here. Do they affect? It seems to me you can have all those changes where you've got different things that are happening. But are they going back to the events that occurred in 2005? I think some are events that happened in 2005 and some are adjustments that are things that happened after 2005. And to be to respond to your question, I think everyone is relying on things that happened after 2005, including the government. And they're not deeming the overpayments and underpayments to have occurred in 2005. They say, for example, for test case one, the overpayments occurred in 2008. They say that's when the overpayment arose. And so to get back to your question about. I'm just trying to understand. So 2005, is it the fact that the underpayment or the overpayment, is that the basis that drives what occurs after it? In other words, you have to have a foundational basis to start with. If they had done it correctly in 2005, would those things that occur after 2005 have made a difference? I mean, would you have any basis for anything if it was correct in 2005? Well, I think things happened after 2005. We filed the 2005, the Bank of America and Merrill Lynch, 2005 tax returns stated zero balance. And it was events after that that both the government and those had been correct. In terms of saying zero, would there be anything that could. I mean, does it have any input if you don't look back at 2004? Well, if you were only looking at 2005, I think we wouldn't owe any money because of the zero balance in the returns. But I understand your question. And my point is, whether it's for this test case. My question is dealing with what is the basis when you're starting with something in the beginning? What are you looking at? What are you using it to measure it against? And so you're saying that these events that occurred is showing you did something wrong. But it looks like to me it keeps going back in 2005. OK, so we're figuring out the Merrill Lynch and Bank of America 2005 tax years. That is the objective. But those tax years are determined based on the adjustments that were made, were based on future events, including and they're not just that all the facts were known at the time. There can be retroactive applications of regulations. There can be lost carrybacks that apply to prior years, et cetera. And so it's just not the case that it was only the facts in 2005. And the government doesn't say that the overpayment and underpayment dates are in 2005 or even 2006. It says that the overpayment dates are in 2008. So I guess the kind of broader answer to your question is no one is really fixing this all in 2005. The government has to consider all these these events in the future, too, in order to try to get the money from us. But they just don't want to consider the effect of the merger. Can I just wrap up? I see my red flags. OK, so I think there's a straightforward path through this case. The statute just doesn't have a timing element. It just doesn't answer that question. And so, you know, we're the same taxpayer now. We're settling up. And the last thing I'd ask the court to look at is the undisputed purpose of this statute. If you don't owe tax, you don't have to pay interest. The government agrees that we can net the payments for everyone. And in situations where we don't owe tax, they want us to pay interest. And they have no explanation for that, none at all. We urge you to reverse. All right. Thank you very much. We appreciate the argument of both counsel and we'll come down and greet counsel. But first, I'd ask the clerk to adjourn court for the day. The honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: G. Steven Agee, James Andrew Wynn, Allison J. Rushing